UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                 :
THE LAW OFFICE OF RICHARD E. LERNER, P.C.,     :    Case No. 18-113
                                                                 :
                            Plaintiff,                           :
                                                                 :
      - against -                                                :
                                                                 :
JUDI GHEDINI a/k/a JUDITH GHEDINI,                               :
JONAS GAYER,                                                     :
                                                                 :
                            Defendants.                          :
---------------------------------------------------------------- x

STATE OF FLORIDA          )
                          ) ss.:
COUNTY OF PALM BEACH      )

JUDITH GHEDINI, being duly sworn, deposes and says:

1) I am a defendant in the above-captioned action commenced by plaintiff, the Law Office of Richard E. Lerner, P.C. ("Lerner" or "Lerner Firm"). Lerner was my former counsel in a state court action captioned *Ghedini v. Shapolsky*, Index No. 653461/2013 (the "State Court Action"). I submit this affidavit in opposition to Lerner's motion to remand this action to the Supreme Court of the State of New York, Queens County.

2) My discharge of the Lerner Firm for cause in May 2017 ended a three-year relationship that eventually turned very toxic. The last straw for me was when I learned that Lerner and his associate, Frederick Oberlander ("Oberlander") met with Arthur Shapolsky—the judgment debtor in the State Court Action ("Shapolsky")— and his counsel to discuss a type of non-cash structured settlement ████████████. While the timing of my interaction with Jonas Gayer ("Gayer") coincided with the discharge of Lerner, one had nothing to do with the other. In fact,

Mr. Gayer was not even aware of the termination until I contacted him seeking a recommendation for a new attorney.

3) At all times, I was the one to reach out to Mr. Gayer who was my former tax preparer when I lived in New York City. He never solicited me, became involved with, nor interfered in any manner with my relationship with Lerner. ~~[redacted]~~ not a basis to bring him into a dispute, which at its heart, centers only on the Lerner Firm's claim for fees following my discharge. The salient issue for this Court to determine will be whether Lerner was discharged for cause or without cause. Mr. Gayer had absolutely nothing to do with that decision.

**BACKGROUND OF THE STATE COURT ACTION**

4) About 10 years ago, I gave Arthur Shapolsky— a friend of over thirty years and a prominent real estate businessman—$500,000, in the form of an on-demand loan paying 10% compound interest. The money I loaned him represented virtually all of my savings, the bulk of which came from the sale of my New York City apartment. Shortly before I gave Shapolsky my money, I moved to Miami, so that I could retire and subsist on my savings and social security.

5) Approximately a year and a half later Shapolsky's payments on the loan became irregular & intermittent. In August 2010, following his failure to make payments for a period of time, I made a demand on Shapolsky for the full amount due under the terms of our agreement. Shapolsky defaulted. By this time, I was in dire financial straits and was living off my monthly social security checks.

6) I was forced to move a number of times because of ever-increasing rents which I could no longer afford. I remember at one point when I was forced to leave one apartment but before I could move into a cheaper one, I had to spend the night at Miami International Airport. It was an experience that haunts me to this day.

7) At one point, I confronted Shapolsky and asked why he was doing this to me. His response was simple and straight to the point—it was just business and I should not take it personally. I am 72 years old and living on my own in a small run-down apartment without any family to turn to. This is not what I planned for my retirement. Shapolsky ruined my life.

**RETENTION OF THE LERNER FIRM**

8) I retained the Lerner Firm on September 23, 2013. Under the terms of the retainer agreement, the scope of the representation was to "provide advice and counsel with respect to [my] efforts to collect approximately $500,000 in principal, plus accrued statutory and contract interest" in connection with certain loans made to Shapolsky. Moreover, the Lerner Firm agreed that it would conduct investigations and pursue anyone who had been working in "wrongful concert with him or [were] the beneficiaries of fraudulent conveyances or transfers" that were made to "defeat [my] rights." This did not happen.

9) On or about March 31, 2016—nearly three years after the Lerner Firm was retained in this collection matter—the Supreme Court, per Justice Charles Ramos, granted Plaintiff's motion for summary judgment in its entirety. It took another seven months for the judgment to be entered. On October 17, 2016, a money judgment in the amount of $810,602 was entered in my favor and against Shapolsky. I expected collection efforts to proceed at full speed. This also did not happen.

10) I fired the Lerner Firm in the latter part of May 2017. My reasons for termination were multiple and were grounded primarily in ███████████████████████████████ ████████████████████ However, the Lerner Firm's ███████████████████ ████████████████ also contributed significantly to my decision.

11) Specifically, apart from serving two information subpoenas—one on Shapolsky and the other on his girlfriend ████████████████████—little else was done in terms of post judgment discovery. I am not aware of any third-party subpoenas being served on banks or other third-parties who did business with Shapolsky.

12) On April 14, 2017, the Lerner Firm filed a contempt motion against Shapolsky asserting that Shapolsky, among other things, was hiding assets. ████████████████ ████████████████████████████████████████████████████████████ ████████████████████ After filing of this contempt motion and their discussions with Shapolsky and his attorney ██████████████████████████████████████ which involved the assignment of two (out of state) mortgages held by Shapolsky. I am a resident of Florida. These mortgages were for properties in Connecticut. ████████████████ did not trust Shapolsky. If there was a default, how would I enforce these mortgages? I have no money. I wanted cash and the security it offered, not an annuity from a Shapolsky mortgage. Lerner and Oberlander knew this as ████████████████████████████████████ ████████.[1]

13) Therefore, I was ████████████████████████████████████████ ████████████████████████████████████████████████████████████

---

[1] Obviously, I would have had no problem if Shapolsky offered to sell his mortgage interests in the market and give me the cash in order to reduce the amount of the Judgment. As far as I know that was never even considered although Lerner told Shapolsky's attorney at one point that I wanted cash.

█ While Shapolsky was at the settlement meeting, I was not even a participant in the meeting (by phone). ███████████████████████████████████

███████████ Shapolsky's claim that he "was not in possession of any significant amount of cash" and therefore,████████████████████████████. It was as if I was an afterthought in these settlement negotiations.[2] What is even more galling is that the Lerner Firm was likely to be paid up front as part of this structured settlement.

**COMMUNICATIONS WITH JONAS GAYER**

14) Mr. Gayer was my former tax preparer while I was living in New York City. I knew that he once worked for the IRS. I also knew that he was an enrolled agent as it was on his letterhead. ███████████████████████████████████████

█████████████████████████████████████er.

15) The string of email communications beginning on April 24, 2017 as cited by Lerner,████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████.[3]

---

[2] While the Lerner Firm spends an inordinate amount of time in its proposed complaint explaining the supposed benefits of this deal and the consequences that would befall me if I did not agree (¶¶ 9-13), the fact remains that neither Lerner nor Oberlander ███████████████. This is borne out by the Lerner Firm's July 2017 order to show cause which sought, in part, the appointment of a guardian *ad litem* to make decisions for me in the case with respect to settlement.

[3] While Lerner tries to paint a picture of me as ████████████████████████████
████████████████████████████████████████
████████████████ As it turns out and through post-judgment discovery, I have learned

16) I reached out to Mr. Gayer and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



17) Lerner has twisted my words and taken my statements out of context. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Proposed Complaint ¶ 61. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (which is what makes Lerner's claims so absurd). Finally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, because who I consulted following the collection of my judgment would not have impaired Lerner's rights one iota even if he had been discharged without cause.

18) The sum and substance of my communications with Mr. Gayer merely reflect ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To this day, I have no reason to believe that Mr. Gayer did anything wrong or improper. Mr. Gayer never solicited or wrongfully persuaded me to discharge Lerner. As I stated above, my discharge of Lerner had nothing to do with Mr. Gayer.

19) In addition, I never disclosed the identity of my former counsel to Mr. Gayer and I never communicated with Mr. Gayer that my former counsel believed he had committed a crime.

---

there are bank records that show Shapolsky made payments to his girlfriend in connection with the purchase of the condo although it was his girlfriend who ultimately took title.

20) Mr. Gayer never advised me (directly or indirectly) to discharge my counsel. In fact, I only told him about it *after* it happened when I reached out to him to see if he could recommend new counsel. He was not able to refer me to anyone.

**THREAT TO REVEAL CONFIDENTIAL INFORMATION**

21) While Lerner was still acting as my attorney, I forwarded the emails between Mr. Gayer and me in confidence, and solely for the purpose of seeking legal advice. ███████████████████████████████████████████████████████████████████████████████

22) I am absolutely sick that Lerner and Oberlander are now attempting to use confidential communications disclosed to them for the purpose of seeking legal advice as a bludgeon to coerce me into withdrawing my claim of discharge for cause. I discharged them because ███████████████████████████████████████████████████. It is also a form of blackmail. ███████████████████████████████████████████████████████████████████.[4]

23) It is my understanding that this is not the first time that Lerner and Oberlander have used the threat of exposing confidential information in an attempt to obtain monetary compensation. I have learned that there is an abundant amount of litigation in both State and Federal Court on the improper conduct of Lerner and Oberlander in using confidential documents in order to press questionable claims. In fact, I recently read a newspaper article in the New York Law Journal (Oct. 30, 2017) that reported the dismissal of a $100 million qui tam claim brought by them because the claim was based on the use of confidential information.

---

[4] I note that Lerner filed his initial memorandum which attached the confidential emails publicly and only filed them under seal by order of the Court. Lerner did not even attempt to redact communications between the Firm and me before publicly filing.

24) I have also learned that both Lerner and Oberlander have been the subject of a complaint to the grievance committee of this Court for using confidential information as a basis for monetary claims.

25) I respectfully request that Lerner's motion for remand be denied.

_____
Judith Ghedini

### Acknowledgement

STATE OF FLORIDA        )
                        ) ss.:
COUNTY OF PALM BEACH    )

The foregoing Affidavit was acknowledged before me this 23rd day of March 2018 by Judith Ghedini who is personally known to me or who has produced ~~personally known~~ as identification and who did/did not take an oath.



Notary Public

My commission expires _____