# THE LAW OFFICE OF RICHARD E. LERNER, P.C.

**Richard E. Lerner, Esq.**
**69-46 Harrow Street**
**Forest Hills, New York 11375**

-and-

**122 West 27th Street, 10th Floor**
**New York, New York 10001**
**Phone: 917.584.4864**
**Fax: 347.824.2006**
**richardlerner@msn.com**

June 11, 2018

Hon. Magistrate Judge Roanne L. Mann
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, New York 11201


Re:    Law Office of Richard E. Lerner, P.C. v. Ghedini and Gayer
       EDNY Docket 18-cv-113


### Plaintiff's Response to Defendant Judith Ghedini's Letter Motion for Disbursement of Funds (Docket Entry 32)

Dear Magistrate Mann:

### Summary

I respond to defendant Ghedini's June 7, 2018, motion in which her new counsel tells the court that (1) based significantly on my prior work, said counsel has recovered $400,000 of the $900,000 judgment (with interest) that I won for Ghedini two years ago; (2) recognizing that I have a charging lien on it and a right of action against anyone interfering with it, he's holding it in his firm's IOLA account; (3) she would like the money; so (4) she would like the court to order most of it given to her.

He doesn't say (1) how this court has jurisdiction to order that (*it doesn't*); (2) how if it had jurisdiction it could order the relief without first determining the amount of my lien, which must be withheld from any distribution to her (*it can't*); (3) how the court could do *that* without first determining the fee I deserve in *quantum meruit* (*it can't*); and (4) how the court could do *that* without allowing defendant Gayer to be heard, as he is sued for inducing Ghedini's abrogation, so – if liable – will be liable for the same amount as Ghedini, yet by letting him be heard the court would be finding non-fraudulent joinder so conceding no jurisdiction to do anything but remand (*it can't*).

1

**Jurisdictional Issues**

Respectfully, Your Honor lacks jurisdiction to entertain the motion for two reasons.

*First*, Your Honor can't decide Ghedini's motion because it raises an issue (preliminary merits relief) not within the jurisdiction of a magistrate judge to decide. Granting such relief is not within the powers enumerated in 28 U.S.C. 636. As the parties have not consented to Your Honor deciding all issues in the case, Your Honor lacks the power that defense counsel asks Your Honor to exercise – to issue an order authorizing the disbursement of funds from escrow as to which the plaintiff has, by operation of law, a charging lien.

So there be no confusion: Plaintiff has neither expressly consented to the magistrate's exercise of plenary jurisdiction, nor has it consented by conduct, since plaintiff has made no general appearance in the proceedings before the magistrate. Plaintiff has made it a point in its papers to recognize Your Honor's authority, as limited to standard pretrial non-dispositive matters. Here, Your Honor's authority is limited to issuing a Report & Recommendation with respect to the motion for remand, as a remand order itself dispositive, thus outside a magistrate's jurisdiction, absent consent.

As set forth fully below, before the magistrate could grant Ghedini the relief she requests, which grant itself would be dispositive, the magistrate would have to determine the amount of plaintiff's fee in *quantum meruit* – thus, the amount of its lien – which would be then binding on the parties, and so necessarily determine most of the ultimate facts at issue, and thus would be dispositive.

This court simply cannot grant the relief requested. *Ghazoul v. International Management Services, Inc.*, 398 F. Supp. 307 (SDNY 1975).

*Second*, there hasn't even been a determination that the court has jurisdiction over the case. Ghedini removed it to federal court, alleging fraudulent joinder. Plaintiff moved to remand, on the ground that the claims against non-diverse defendant Gayer state a viable cause of action, and even if there be doubt as to whether a viable claim exists against him, the case must still be remanded. That motion remains *sub judice*. So, the court can decide nothing but whether it has jurisdiction.

So stated an Oregon district court: "A federal court presented with a motion to remand is limited solely to the question of its authority to hear the case pursuant to the removal statute." *Evans v. Washington County*, 1999 U.S. Lexis 20036 (Distr. of Oregon 1999). So did one much closer to home. *County of Nassau v. State of New York*, 724 F.Supp.2d 295, 300 (EDNY 2010):

> The Court will address plaintiffs' remand before addressing defendants' motions because the remand motion challenges the Court's jurisdiction to hear this case. If the Court does not have jurisdiction, it does not have power to decide the defendants' motions. See *Broder v. Cablevision Sys.* 418 F.3d 187, 194 (CA2 2005) ("Because a holding that the district court lacked removal jurisdiction would end our inquiry, we first address the district court's denial of [plaintiff's] motion to remand the case to state court for lack of jurisdiction."); see also *Cotter v. Milly LLC*, 09 Civ. 04639 2010 WL 286614, at *2 (S.D.N.Y. Jan. 22, 2010) ("Because the issue of proper removal involves this Court's subject matter

jurisdiction, it must be decided prior to [defendant's] motion to dismiss under Rule 12(b)(6)."

*See also Wilds v. United Parcel Service*, 262 F.Supp.2d 163, 177-178 (2003) (where motion for remand made, only question present is whether there is basis for federal jurisdiction to support removal, court can't reach merits of claim or counterclaims).

### A Charging Lien is Secured by the Entirety of the Fund, Like any Lien

New York disputes over legal fees and the laws governing them go back literally farther than New York itself, to the time when New York was Nieuw Amsterdam.[1] But we need not go back that far to understand this case. As the court is aware, a charging lien "is a device to protect counsel against 'the knavery of his client,' whereby through his effort, the attorney acquires an interest in the client's cause of action. *In re City of New York*, 5 N.Y.2d 300, 307 (1959)." *Butler, Fitzgerald & Potter v. Sequa Corp*., 250 F.3d 171 (CA2 2001).

To begin with, as plaintiff's papers in support of remand make clear, and so will only be touched on briefly, (1) a special proceeding under Judiciary Law § 475 to fix the amount of an attorney's charging lien, and (2) a plenary proceeding in *quantum meruit* are entirely different proceedings, though of course ultimately dependent on similar facts.

By analogy, someone who takes his car to a mechanic for repairs and is dissatisfied with the work may be displeased to find that the mechanic has a lien on the car, so long as he retains possession. That lien gives him the right to be paid first before any others out of proceeds of the sale of the car, and it gives him standing (more properly conveys a chose in action) for him to commence litigation to force such a sale. However, it is not the same thing as his general contract right to be paid, which he can enforce by a plenary suit for money damages.

Similarly, while (1) an attorney has a charging lien from commencement of and appearance in the action; and (2) if discharged without cause prior to completion of the action may bring such a special § 475 action to "fix" or determine it; then (3) may enforce that *qua* a lien; though (5) if the client eventually recovers less than the amount of the lien, or nothing, the lien is extinguished to that extent; still (6) that has no effect on the attorney's right to commence a plenary action in quantum meruit (or quasi-contract) against the client even if the client has recovered nothing.

Simply, a lien is merely an interest held by one in property of another to secure the other's performance of an obligation, and is neither the obligation itself nor the *sine qua non* of recovery.

A very few cases help establish this:

For example, *Butler, supra,* makes clear that the amount recoverable by an attorney who is discharged without cause and sues in quantum *meruit is not dependent upon the ultimate recovery*. There, Butler was discharged, and new counsel substituted. *Butler sought to fix its lien before there was a final resolution of the underlying case*, and the trial court, after determining that Butler had been discharged without cause, obliged and fixed its fee at about $2.9 million.

---

[1] See, e.g., *1 Colonial Laws of New York 1638-53* (1894). Also see *Legal and Judicial History of New York 73 (Alden Chester Ed., 1911),* describing a 1658 proclamation of Peter Stuyvesant regulating legal fees.

3

Even more explicative, and controlling is *Universal Acupuncture v. Quadrino & Schwartz*, 370 F.3d 259, 263-264 (CA2 2004): (citations and internal quotes omitted)

> Under New York law, a lawyer's right to recover in *quantum meruit* accrues immediately upon discharge. *As a result, New York courts ordinarily calculate quantum meruit compensation at that time.* As a practical matter, *quantum meruit* valuation of services rendered by a discharged attorney can best be determined at the time of discharge, rather than some months or years later when the case finally ends. [*Q*]*uantum meruit* compensation *is a fixed dollar amount determined at the time of discharge*…. [¶] [A] discharged attorney's recovery in *quantum meruit* for a fee is not limited by the former client's ultimate recovery, which might be determined after — sometimes long after — the time of discharge. New York courts' preference for thus determining *quantum meruit* attorney's fees upon discharge is inconsistent with making such fees contingent upon a monetary recovery. And it follows that a court ought not to consider the former client's actual recovery in determining *quantum meruit* fees

In other words, the amount of plaintiff's entitlement to recovery in *quantum meruit* from Ghedini is not dependent on how successful her current lawyers are in their collection efforts, nor can such a dependence be forced on plaintiff without its consent. *But at the same time,* to the extent they are in any respect successful in their collection efforts, Lerner has an indvisible lien in the amount of that *quantum meruit* fee against any settlement fund they accumulate.

(And if by further example didactic Shapolsky were to file for bankruptcy and eventually discharge Ghedini's judgment, while Ghedini could not then recover from him, that would have no effect whatsoever on plaintiff's entitlement to a fee in *quantum meruit* from her, and no effect whatsoever on the amount of such fee to which he was entitled, for which Ghedini would be personally liable to the extent any prior recovery had not satisfied it.

Finally, for this section, plaintiff refers the court to *Spinello v. Spinello*, 70 Misc.2d 521 (1972), holding that an attorney's charging lien against a doctor's arbitration was superior to the lien of the doctor's ex-wife for support, that the ex-wife was entitled only to the balance of the award after the attorney's fees were deducted in the full amount of the lien, first dollar to last, and that the determination of same was proper in such a plenary or intervenor proceeding even though it had not been first determined in a § 475 proceeding.

So all this leaves the posture of this proceeding as follows: (1) There has been a partial recovery of $400,000 for Ghedini; (2) the money is held by her new counsel; (3) there has been no determination whether plaintiff was discharged for cause; (4) assuming that such a determination is made and results in a finding that plaintiff was not, at that point, and not before, can there be any determination what fee plaintiff is entitled to in *quantum meruit*; so clearly that determination has not been made; (5) while plaintiff could have gone through a special § 475 hearing to fix the fee more quickly than this plenary proceeding, it chose not to because (a) plaintiff wanted the benefit of full disclosure not otherwise available in a special (CPLR Article 4) proceeding; and more importantly, (b) there was no authority by which it could force co-defendant Gayer, who plaintiff alleges is equally culpable in *quantum meruit*, into such a proceeding, as Gayer was never a client.

So, assuming there was jurisdiction over any of this, that would still leave the court with the task (working backwards) of (1) determining the charging lien before it could determine how

much could be released; (2) determining the fee *in quantum meruit*, which is precisely the amount of the charging lien; (3) determining whether the discharge was for cause; in other words, trying the entire case on the merits as to Ghedini which it can't do even if it had plenary jurisdiction by a consent reference (and it does not) because it can't reach the merits until determining the remand motion; and (4) even more troubling, it would leave Gayer in limbo insofar as unless the court held that his rights as a co-conspirator had been adequately litigated by Ghedini and so he had to suffer the offensive use of collateral estoppel, he would have to be heard, which, once again, this court cannot do, because if it hears him, then it admits that joinder was not fraudulent and so admits it has no jurisdiction, and must "order" (actually issue an R&R recommending) remand and so cannot hear him. And so it goes.

*** 

Defendant Ghedini's motion is premature. It is also procedurally defective, insofar as she requests relief without any supporting affidavit to support her claims of urgent need. Regardless of the procedural defects, while she may be disappointed that such relief may not be granted now, it is the natural and forseeable consequence of her having removed this case to federal court, from a state court which is well equipped to resolve fee disputes expeditiously; defendant Ghedini should have foreseen the predictable consequence that a motion for remand back to state court would be filed.

Interestingly, the court may recall (it is in plaintiff's remand papers) that plaintiff's letter of engagement with Ghedini expressly warned her that although she had the right to discharge at any time, if she did so prior to completion and without cause she might wind up personally liable to counsel for an amount in excess of any recovery.[2]

Now, on June 7, Your Honor directed the parties to engage in good-faith negotiations to resolve the issue presented.[3] At 9:21 am on June 8, the undersigned presented a good-faith settlement offer – made after consultation with ethics counsel – to counsel for defendant Ghedini. At 9:29 am, her counsel advised that my proposal was rejected. Immediately thereafter, in response to my inquiry, counsel advised that my settlement proposal was not even presented to her, because, counsel advised, there could be no settlement inasmuch as Ms. Ghedini has made clear that she will never, ever agree to withdraw the claim that plaintiff was discharged for cause. Nonetheless, Ms. Ghedini's counsel and plaintiff made a further attempt to resolve the issue

---

[2] Although this may seem a harsh result in some sense, mitigated as best plaintiff could by the warning, *Quadrino* makes clear it is the policy of New York:

> The district court warned, perceptively, that allowing a discharged attorney to recover *quantum meruit* fees despite the client's ultimate failure to obtain a monetary recovery may constrain the client's ability to terminate the representation. *Universal Acupuncture,* 232 F.Supp.2d at 134. But we are bound by the New York Court of Appeals's interpretation of New York law. And the Court of Appeals has instructed that [p]ermitting an attorney improperly discharged to recover the reasonable value of services rendered in *quantum meruit,* a principle inherently designed to prevent unjust enrichment, strikes the delicate balance between the need to deter clients from taking undue advantage of attorneys, on the one hand, and the public policy favoring the right of a client to terminate the attorney-client relationship without inhibition on the other.

[3] Plaintiff presumes that the court did not intend this to be injunctive in any sense that would lie outside the scope of the non-consent reference authority, and so participated in good faith on the assumption that the court meant to simply use its powers of moral suasion to bring about an amicable resolution.

5

during a telephone later that afternoon. However, inasmuch as Ms. Ghedini will not withdraw the claim that plaintiff was discharged for cause, there can be no settlement, for the consequence of maintaining that position is that there will have to be a trial of the issue of whether plaintiff was discharged for cause.

So long as she maintains that plaintiff was discharged for cause, the parties are at impasse.

One last point: In counsel's letter of June 7, counsel states that on June 5th he had sent me an email requesting my consent to a drawdown on the escrowed funds, and recited that I replied that $25,000 could be drawn down, but would like to speak with ethics counsel before responding further. Instead, of waiting for me to get back to him, counsel wrote to Your Honor insinuating that I was being dilatory, questioning why I would even wish to speak with ethics counsel. But then counsel goes on to say in his letter of June 7th that withholding consent to draw down on the escrowed funds might be some kind of unethical negotiating strategy.

This is why it is proper to consult ethics counsel, and a professional discourtesy to suggest that doing so is a dilatory tactic. Suffice it to say, I have consulted with ethics counsel. Obviously, I cannot be compelled to reveal the contents of my communications with counsel, I but will say that inasmuch as my positions are well-founded in law they are ethical. It may well be that if Your Honor were to exercise its suasion to convince Ms. Ghedini to drop the claim that she discharged plaintiff for cause – for having engaged in settlement negotiations with defendant Shapolsky in the underlying case, allegedly against her instructions – then it is quite likely that the impasse can be overcome.

That brings up an interesting observation about the balancing of equities. Especially considering that her counsel did not see fit even to include an affidavit of extraordinary need (which would not be relevant but at least would be an attempt to follow the rules), plaintiff sees no equity in allowing defendant to accuse him of misconduct, even (by her emails produced by Gayer) acts of criminal collusion, then plead that she needs the money.

Respectfully submitted,

THE LAW OFFICE OF RICHARD E. LERNER, P.C.

Richard E. Lerner

cc:    (Via ECF)